UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARDRA YOUNG,

                Petitioner,              Case Number 01-10094
                                                          Honorable David M. Lawson

v.

PAUL RENICO,

                Respondent.
_____/

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Ardra Young, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1997, the petitioner was convicted of two counts of first-degree murder, Mich. Comp. Laws § 750.316, and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following the shooting deaths of his wife and son. He was sentenced to concurrent terms of mandatory life imprisonment for the murder convictions and two years imprisonment for each felony-firearm conviction.

The Court originally denied the petitioner's *pro se* application for writ of habeas corpus on November 19, 2002. The Court addressed all of the issues raised in the petition, which included the following:

    I.    Petitioner was denied his Fourth, Fifth, Sixth, and Fourteenth Amendment rights when the Detroit Police subjected him to a custodial interrogation without probable cause, used the illegal detention to extract a "confession," defense counsel failed to move for suppression on the basis of an illegal arrest, and the trial court erred in its adjudication of the ultimate "in custody" determination.

    II.   Petitioner was denied his First, Fifth, Sixth, and Fourteenth Amendment rights when the prosecutor made improper and prejudicial forays into the

   religious beliefs of a state witness, explored petitioner's religious beliefs and opinions through this witness, disparaged petitioner's religious beliefs and opinions, engaged in religious-based closing arguments, and defense counsel failed to lodge a contemporaneous objection.

III. Petitioner was denied his Fifth, Sixth, and Fourteenth Amendment rights by the trial court's abuse of discretion in admitting improper rebuttal testimony concerning a collateral issue injected into the case by the prosecutor during re-cross examination of petitioner over the objection of defense counsel, and the Michigan Court of Appeals failed to address this issue on petitioner's appeal of right.

IV. Petitioner was denied his Fifth, Sixth, and Fourteenth Amendment rights when the prosecutor improperly cross-examined a critical defense witness, argued the effect of evidence not entered into the record, vouched for a police witness, bolstered the testimony of a police witness, and defense counsel failed to object thereto.

  The petitioner subsequently filed a motion to alter or amend the judgment, which the Court construed as a motion under Federal Rule of Civil Procedure 60(b). The Court ordered that the petitioner be appointed counsel. The Court ultimately granted the motion, ordered an evidentiary hearing on the question of whether the petitioner's counsel was ineffective for failing to move to exclude his statement as the fruit of an illegal arrest, and referred the matter to Magistrate Judge Charles E. Binder, who conducted the hearing and issued a report recommending that the petition be denied on this issue. After the parties stipulated to extend the time for filing objections, the petitioner filed his objections to the Report and Recommendation on January 7, 2005. This matter is now before the Court for *de novo* review. *See* Fed. R. Civ. P. 72(b).

  Although the issue is a close one, the Court agrees with the magistrate judge's reasoning that counsel was not ineffective for failing to raise this Fourth Amendment claim because the claim was without merit. *See Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986) (holding that when an ineffective assistance of claim is premised on an allegation of failure to pursue a Fourth Amendment

claim, it must first be proven that the Fourth Amendment claim is meritorious). Therefore, the Court will adopt the magistrate judge's recommendation on this issue. The Court also incorporates its reasoning from the original, vacated opinion and order [dkt #24] as to the other issues raised in the petition. The Court, therefore, will deny the petition for lack of merit on the grounds presented.

I.

In his Report and Recommendation, the magistrate judge focused on the issue of whether the petitioner was illegally arrested at the time he made his incriminating statement to the police. The magistrate judge explained that the state court had held on appeal that the petitioner was not in custody at the time of his first (non-incriminating) statement to the police, and the police had probable cause to conduct a custodial interrogation of the petitioner at the time that he made the second (incriminating) statement to the police. The magistrate judge considered the petitioner's four grounds for asserting that he had been arrested when he made the first statement to the police, which were that: (1) the police gave the petitioner his *Miranda* warnings at the beginning of the interview; (2) the police asked the petitioner to give up his legally-possessed gun at the beginning of the interview when they learned that he had carried it with him into the police station; (3) Investigator Smith told the petitioner that he "would not walk out of there" shortly before the petitioner made his second statement to the police; and (4) at the end of the petitioner's first statement, Investigator Smith asked the petitioner how long he had been in police "custody," and the petitioner answered that he had been there since 12:20 p.m.

The magistrate judge determined that the petitioner was not unlawfully seized at the time that he gave his first statement to the police. The magistrate judge first observed that the petitioner voluntarily drove himself to the police station to talk to the police. Noting that a consensual

encounter can turn into a seizure within the meaning of the Fourth Amendment if a reasonable person would have believed that he was not free to leave, the magistrate judge opined that a reasonable person in the petitioner's position would not be surprised if the police requested to speak with him at the police station about his activities at the time that his family members were killed. Furthermore, he wrote that a reasonable person would not find it unusual for the police to confiscate a handgun carried into the police station. The magistrate judge also reasoned that issuing *Miranda* warnings as a precautionary measure does not automatically render an encounter a seizure within the meaning of the Fourth Amendment. The magistrate judge therefore concluded that the petitioner was not under arrest or in custody from the time he arrived at the police station until the conclusion of his first statement to the police.

The magistrate judge then determined that the petitioner was not under arrest during the time between his two police statements when he asked Investigator Smith if he could leave and Smith told the petitioner that it would be another ten minutes. To support this conclusion, the magistrate judge cited *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), where the Supreme Court found that a defendant was not seized in violation of the Fourth Amendment where she consented to a search of her person, then told the officer that she had a plane to catch, but ultimately proceeded to submit to a search.

The magistrate judge suggested that the petitioner was first placed under arrest when Investigator Smith returned after a break and told the petitioner that he did not believe the petitioner's story. At that point, the magistrate judge reasoned, the police had probable cause to arrest the petitioner because the evidence indicated that the crimes were not motivated by robbery; Investigator Smith received information that there was trouble in the petitioner's marriage; the

-4-

petitioner's next-door neighbor had contradicted the petitioner's description of what he did when he first returned to Detroit from Illinois; and the doctor at the hospital explained that the petitioner had declined to see his son and insisted that his son be taken off life support. The magistrate judge noted that the unusual circumstances, coupled with the fact that Investigator Smith had caught the petitioner in a lie, weighed in favor of a finding that the police had probable cause to arrest the petitioner. Therefore, the Fourth Amendment claim lacking merit, the petitioner's trial counsel was not ineffective for failing to challenge his incriminating statement on that ground. On this basis, the magistrate judge recommended that the petition be denied.

II.

The petitioner objects to the Report and Recommendation on several grounds. He argues that: (1) the magistrate judge erred in affording deference to the state court's determination concerning when the petitioner was "in custody"; (2) the magistrate judge's report unreasonably applied Supreme Court precedent; and (3) the magistrate judge's assessment of probable cause was objectively unreasonable. The petitioner argues that because the Fourth Amendment claim was meritorious, defense counsel was ineffective for failing to litigate it because the petitioner had hired a private investigator to look into facts surrounding his Fourth Amendment claim and there was no evidence that trial counsel declined to raise the issue as a matter of trial strategy.

A.

First, the petitioner argues that the magistrate judge erred in stating that the state court's determination with regard to whether the petitioner was "in custody" was entitled to deference because such a determination was not strictly a factual determination, but rather one based on both law on fact. The Court agrees that, strictly speaking, the magistrate judge misstated the law when

he explained that a state court's "in custody" determination is entitled to deference under 28 U.S.C. § 2254(e)(1). The Supreme Court has held that, although a state court's determination of the underlying facts are presumptively correct, the inquiry of whether a reasonable person would feel free to terminate the encounter is a mixed question of law and fact that receives independent review. *Thompson v. Keohane*, 516 U.S. 99, 112-13 (1995). However, it is apparent from the report and recommendation that the magistrate judge independently analyzed whether the facts and circumstances warranted the conclusion that the petitioner was "in custody." Therefore, because the magistrate judge did not rely on the state court's "in custody" determination or actually apply the presumption of correctness for his ultimate conclusion, this objection is overruled.

B.

Next, the petitioner asserts that the magistrate judge unreasonably applied Supreme Court precedent where: (1) he extended the "reasonable person" standard to include events that occurred before the petitioner's encounter with the police; (2) he determined that reading the petitioner his *Miranda* rights did not transform the encounter into an arrest; (3) he determined that taking the petitioner's handgun at the police station did not transform the encounter into an arrest; (4) he determined that the petitioner was seized only after Investigator Smith told him that he "would not walk out of there"; and (5) he dismissed the suggestion that the petitioner was in custody since 12:20 p.m. because Smith asked the petitioner how long he had been in police custody and the petitioner answered that he had been in police custody since 12:20 p.m.

The Court finds that the petitioner's challenge to the first issue is without merit. The petitioner argues that the magistrate judge failed to begin his reasonable person analysis during the time frame of the petitioner's encounter with the police. Instead, the petitioner argues, the

magistrate judge began the analysis earlier in the time sequence, starting when the petitioner first learned of the attack on his family. However, as the petitioner notes, the standard applied by the Supreme Court requires a court to consider whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. The circumstances surrounding the event include the fact that the petitioner drove himself to the police station to speak with the police investigating the recent violent attack on his wife and son. Prior to his appearance at the police station, the petitioner, himself involved in public safety as a firefighter, had spoken to his brother and his neighbor, who were both police officers. The two cases the petitioner cites, *Mendenhall* and *Stansbury v. California*, 511 U.S. 318 (1994), do not discuss the temporal distinction that the petitioner seeks to draw. The circumstances surrounding the police request to speak with the petitioner are undoubtedly relevant to the determination of whether the petitioner was impermissibly restrained; therefore, the magistrate judge's conclusion with regard to this fact does not unreasonably extend the relevant legal principle or misapply established precedent, The petitioner's objection, therefore, is overruled.

      The petitioner also objects to the magistrate judge's reasoning as to the police actions of reading the petitioner his *Miranda* rights and confiscating his handgun. The petitioner argues that the reading of *Miranda* rights suggests that the petitioner was seized within the meaning of the Fourth Amendment because the Supreme Court has repeatedly equated *Miranda* warnings with custodial interrogations, and the Sixth Circuit held in *United States v. Obasa*, 15 F.3d 603 (6th Cir. 1994), and *United States v. Arias*, 344 F.3d 623 (6th Cir. 2003), that the issuance of *Miranda* warnings shows that a police encounter has intensified or a detention has grown more serious. The petitioner also cites a recent Seventh Circuit case in which the reading of *Miranda* rights was one

factor in the court's determination that the suspect may have been impermissibly detained before probable cause was established. *See Sornberger v. City of Knoxville*, 434 F.3d 1006 1018 (7th Cir. 2006).

However, it is clear in this case that the petitioner was given his *Miranda* warnings as a precautionary measure. The state court determined at the *Walker* hearing, based on the testimony of Investigator Smith and the petitioner, as well as the signed and initialed *Miranda* rights form, that the petitioner was indeed given his *Miranda* warnings prior to the petitioner's second statement. The rights form was dated and timed at 12:30 p.m., at the beginning of the petitioner's interview with the police. The cases cited by the petitioner do not stand for the proposition that the issuance of *Miranda* warnings *ipso facto* converts a police encounter into a full-blown arrest. *See Obasa*, 15 F.3d at 608 (explaining that "[a]lthough giving *Miranda* warnings to a detainee may not automatically convert a *Terry* stop into an arrest, it is evidence that the nature of detention has grown more serious") (internal quotation marks and alterations omitted); *Arias*, 344 F.3d at 628 (stating that, in addition to a number of other factors, the issuance of *Miranda* warnings "made the seizure more like an arrest"). Rather, the inquiry remains whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554. Giving *Miranda* warnings is but one factor in the overall inquiry. Therefore, to the extent the petitioner contends the magistrate judge incorrectly applied Supreme Court precedent in declining to conclude that the giving of *Miranda* warnings converted the encounter into a Fourth Amendment seizure, the petitioner's objection is overruled.

The petitioner next objects to the magistrate judge's failure to conclude that the seizure of the petitioner's handgun at the police station transformed the encounter into an arrest. In making

this argument, the petitioner correctly observes that a seizure of a person's property "can effectively restrain the person." *United States v. Place*, 462 U.S. 696, 709 (1983). Again, however, the inquiry of whether an arrest has occurred is objective in nature, and the totality of the circumstances must be considered. *See Mendenhall*, 446 U.S. at 554. In this case, the petitioner was a Detroit fireman, and he had a permit to carry the handgun. Nonetheless, the Court agrees with the magistrate judge's conclusion that a reasonable person would not find it unusual for a police officer to ask to hold the individual's gun while in the police station. It is common for public safety officers to surrender their weapons in certain quarters, such as courthouses, airports, and legislative chambers. A reasonable person would not take the request to check a handgun in a police station as signifying an arrest; rather it simply amounted to a reasonable precaution incident to the regular discharge of police business. The petitioner's objection on this ground is overruled.

The petitioner also objects to the magistrate judge's determination that the petitioner was not seized within the meaning of the Fourth Amendment until Investigator Smith confronted the petitioner with his belief that the petitioner was lying, stating that he would "not walk out of there" because "the statement that [you] gave me was bullshit." *Walker* Hearing Tr., Oct. 17, 1997 at 28-29. The petitioner agrees with the magistrate judge that he was under arrest at this point in time, but disagrees with the magistrate judge's conclusion that he was not under arrest prior to this point. The petitioner contends the magistrate judge misconstrued the significance of the circumstances under which the petitioner arrived at the police station for questioning. The magistrate judge found that the petitioner voluntarily consented to the questioning that produced the first (exculpatory) statement and reached this conclusion partially based on the fact that the petitioner drove himself to the police station at a time of his own choosing. The petitioner attacks this rationale, arguing that, irrespective

-9-

of the fact that the petitioner drove himself to the station and did so at a time of his own choosing, the fact that the petitioner appeared at the station pursuant to a police request vitiates any alleged consent. The petitioner cites *Gardenshire v. Schubert*, 205 F.3d 303 (6th Cir. 2000), in support of this position.

It is true that the Sixth Circuit in *Gardenshire* stated that "[a] police officer's statement that 'you need to go' somewhere carries substantial authoritative weight" and "very few people could hear such a directive from a police officer and still think they were free to act otherwise." *Id.* at 314. However, this pronouncement needs to be viewed in context; so viewed, it is plain the Sixth Circuit's statement in *Gardenshire* is inapposite to the matter at hand. In *Gardenshire*, two police officers physically appeared at the appellants' home and told them they needed to go to the station for questioning concerning a burglary. *Id.* at 308. Here, on the other hand, the petitioner called the police station in Detroit from Illinois in the early morning and was asked to come to the police station after he got back in town. The petitioner arrived at the station at around noon the next day, roughly eight hours after he received word that the police were interested in talking to him. Under these circumstances, the Court agrees with the magistrate judge that the petitioner drove himself to the police station at a time of his own choosing and this fact supports the conclusion that the first round of questioning was voluntary in nature. The petitioner's objection to that conclusion is overruled.

The petitioner's last objection concerning the time when the arrest occurred is that the magistrate judge failed to recognize the import of the petitioner's statement that he had been in custody since 12:20 p.m., when he first arrived at the police station. While taking the petitioner's second, inculpating statement, Investigator Smith asked the petitioner, "How long have you been

in police custody?" Trial Tr., Oct. 29, 1997 at 44. The petitioner responded, "Since 12:20 this afternoon." *Ibid.* The magistrate judge rejected the argument that this exchange compelled the conclusion the petitioner indeed was "in custody" or "seized" within the meaning of the Fourth Amendment since 12:20 p.m. The petitioner appears to claim that the use of the words "in custody" by Smith have a talismanic effect, conclusively signifying that the petitioner was under arrest. However, the petitioner has offered no authority in support of this novel position, and the fact that the exchange took place between a police officer and a laymen, not two legal scholars, convinces the Court that it would be unwise to ascribe such effect to the language they used. Under the circumstances, the petitioner could have reasonably understood Investigator Smith's question, "How long have you been in police custody?," to simply mean "How long have you been at the police station?" Moreover, it was not Smith who concluded that the petitioner was "in custody" from the time he arrived at the police station; it was the petitioner himself who gave the answer. That answer itself was not dispositive of the issue, but rather it was simply one of the circumstances that were taken into account – circumstances that included the petitioner's testimony in state court that he did not view the encounter at that point as an arrest. The petitioner's objection to the magistrate judge's conclusion that the petitioner had not been seized when he gave the first statement is therefore overruled.

C.

Lastly, the petitioner objects to the magistrate judge's assessment of probable cause, arguing it was objectively unreasonable. The magistrate judge concluded that Investigator Smith had probable cause to arrest the petitioner at the time he confronted the petitioner with his belief that the petitioner was lying. The magistrate judge arrived at this conclusion based on the fact that

Investigator Smith knew: (1) the murders were not motivated by robbery; (2) the petitioner had not been intimate with his wife in over a year and allegedly had a girlfriend; (3) another police officer had investigated the crime scene, found a valve cap lying next to the car, and believed the tire had been purposefully deflated; (4) the petitioner had lied to him in stating that he had driven directly from Illinois to the hospital in Detroit; (5) the petitioner had actually gone home before driving to the hospital to check on his son, walked next door to his neighbor's home, and had a fifteen-to-twenty-minute conversation with his neighbor while sitting at the dining room table; and (6) upon arriving at the hospital, the petitioner had requested immediately that his son be taken off life support. The magistrate judge concluded that Investigator Smith, armed with all this information, had probable cause to believe the petitioner was involved in the murders of his wife and son. The Court agrees.

As the petitioner concedes, probable cause exists when an officer has "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" that the suspect has engaged in criminal activity. *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (internal quotation marks omitted). Accordingly, "[t]he establishment of probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Ibid.* (quoting *Illinois v. Gates*, 462 U.S. 313, 244 n.13 (1983)). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Probable cause must be evaluated based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).

Here, at the time of the seizure, Investigator Smith had information to suggest the murders were not the result of a robbery gone afoul, but were the product of calculated action. Investigator Smith also knew that the car had a flat tire and a valve cap had been found nearby; he could therefore reasonably infer that the tire had been intentionally deflated and the crime scene staged. On top of this, Investigator Smith knew of circumstances tending to show that the petitioner had a motive to kill his wife. Smith also caught the petitioner in a lie and learned that the petitioner had actually stopped by his home and his neighbor's house to engage in conversation before proceeding to the hospital where his son was on life support.

The petitioner's attorney has offered reasonable alternate inferences for each of these basic facts, which are consistent with innocence. The existence of alternate inferences, however, does not diminish the fact that the arresting officer could draw guilty inferences within reason in his probable cause assessment. For instance, it may be appropriate to attach less significance to Investigator Smith's knowledge that the petitioner immediately had requested his son be removed from life support in light of the facts that Dr. Robert Johnson, the attending physician, testified he informed the petitioner that his son's prognosis was extremely grim, and Dr. Johnson's testimony that the petitioner's wife and son were devout members of the Jehovah's Witnesses sect, who, due to their religious tenets, do not "believe in a lot of . . . high tech medical care." Trial Tr., October 28, 1997 at 215. In light of these facts, it now is reasonable to conclude that the petitioner's request that his son be removed immediately from life support is not indicative of any wrongdoing on the petitioner's part and does not amount to suspicious activity. On the other hand, it is unclear whether, pursuant to his conversation with Dr. Johnson, Investigator Smith knew of all these circumstances at the time of the arrest. If Smith did know all that Johnson knew, the petitioner's demand that his

son be removed from life support would not bolster the conclusion that Smith had probable cause to arrest the petitioner. But if Smith only knew that the petitioner had immediately requested the removal of life support, Smith might reasonably rely on this information as reinforcing his belief that the petitioner had a hand in the killings and wanted to eliminate a potential witness. Even if the Court sets this issue aside, however, the Court finds that the other facts and circumstances within Investigator Smith's knowledge at the time of the arrest support a finding of probable cause. Although Smith did not have overwhelming proof that the petitioner was guilty, he did have "reasonable grounds for belief" that the petitioner was involved in the murders. *See Ferguson*, 8 F.3d at 392. Investigator Smith therefore had probable cause to arrest the petitioner before the incriminating statement was given. The Court, therefore, must overrule the petitioner's objection on this ground.

### III.

The Court concludes that the magistrate judge correctly determined that the petitioner's Fourth Amendment claim is without merit. The petitioner's ineffective assistance of counsel claim predicated thereon consequently does not warrant habeas relief. As noted earlier, the Court also incorporates its findings and conclusions from the original, vacated opinion and order [dkt #24] as to the other issues raised in the petition.

Accordingly, it is **ORDERED** that the petitioner's objections to the Report and Recommendation [dkt # 56] are **OVERRRULED**.

It is further **ORDERED** that the magistrate judge's Report and Recommendation [dkt # 53] is **ADOPTED**.

It is further **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

                    s/David M. Lawson
                    DAVID M. LAWSON
                    United States District Judge

Dated: January 23, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2007.

                    s/Felicia M. Moses
                    FELICIA M. MOSES